# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6314 | **DATE** | 8/30/2001 |
| **CASE TITLE** | Gary Michael Dyrek vs. Jane Garvey | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court grants defendant's motion for summary judgment. The trial date is stricken. The date for submitting the proposed final pretrial is stricken. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 31 2001 date docketed | 17 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | 01 AUG 30 AM 11:41 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GARY MICHAEL DYREK, | ) | |
| Plaintiff, | ) | 00 C 6314 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| JANE GARVEY, Administrator of the | ) | |
| Federal Aviation Administration, | ) | |
| Defendant. | ) | |

**DOCKETED AUG 3 1 2001**

## MEMORANDUM OPINION AND ORDER

Gary Michael Dyrek sued his former employer, Jane Garvey, the administrator of the Federal Aviation Administration (FAA), alleging that the FAA terminated him in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 1277, and Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* In his complaint, plaintiff alleges that the FAA terminated him because of a discriminatory animus directed against employees who have, or are regarded as having, a disability. The FAA has filed a motion for summary judgment.

I.  Background

Plaintiff began working for the Federal Aviation Administration (FAA) as an Air Traffic Controller Specialist (ATCS) on September 6, 1981. FAA rules and regulations require an ATCS to maintain a valid medical certificate. In October 1993, plaintiff was diagnosed with diabetes mellitus. In May 1997, plaintiff began to treat his diabetes with daily injections of insulin. An insulin-using ATCS can keep his medical certification only through "special

consideration" based on a favorable review of his medical history, the results of a comprehensive medical evaluation, documentation of proper education regarding diabetes, and a demonstration of diabetes control skills by the ATCS.

Upon a grant of special consideration for a medical condition, the insulin-dependent ATCS and his supervisors must follow strict FAA rules to be certain the ATCS is maintaining appropriate blood glucose control. The regional flight surgeon must monitor the ATCS for adherence to medical protocol; the ATCS must provide tri-monthly reports from medical specialists and must perform all safety-related duties in the presence of at least one employee who is aware that he uses insulin; the ATCS's supervisors must receive education about diabetes and conduct two observations per week of acceptable recorded glucometer readings; the ATCS must conduct self-testing and glucose monitoring during work hours, is subject to immediate reporting to medical authorities, and must provide records of any hypoglycemic episodes, hospitalizations, accidents or significant illnesses. These strict measures are intended to prevent dangerous complications, such as a loss of consciousness or a seizure, that might interfere with the ATCS's ability to control air traffic safely.

Plaintiff points out that "continued clearance [of an ATCS] requires control of diabetes . . . through . . . maintenance of appropriate blood sugar levels." In the Medical Guideline letter B-5a-0026, the FAA articulates specific blood sugar test results to substantiate diabetes control. The AIC test provides a long-term measure of how well a diabetic's blood sugar has been controlled over time. Plaintiff claims that he never had an AIC test result that was above the percentage of blood sugar that indicates uncontrolled diabetes. There were no reports of

plaintiff's health having failed while he was performing his ATCS duties or that he felt sick or physically compromised from his diabetes while on the job.

In a June 30, 1997, letter, the FAA regional flight surgeon, Dr. Paul Brattain, notified Dyrek that his medical clearance was being withdrawn immediately because he was not controlling his diabetes. In the letter, Dr. Brattain stated that the medical office had received a June 13, 1997, medical report from plaintiff's physician that indicated plaintiff had recently started on insulin to control his diabetes, and that the laboratory results indicated unsatisfactory control of his condition. Plaintiff denies that his diabetes was not under control but admits that the letter he received indicated that to maintain special clearance, he needed to submit a comprehensive medical report from his attending physician that included specific information as to his diagnosis, medication, current status, prognosis and recommendations, treatment regimen, and test results. As a result of the withdrawal of medical clearance, plaintiff was assigned to perform limited duties unrelated to air safety pursuant to an FAA memorandum of understanding with the National Air Traffic Controllers Association (NATCA) that allows temporarily medically disqualified controllers to perform limited duties.

A month later, on July 24, 1997, Dr. Brattain notified plaintiff that a medical report plaintiff's doctor, Dr. Steven Bielski, had submitted was insufficient to demonstrate that plaintiff's diabetes was under control. Under FAA regulations, plaintiff needed to submit a comprehensive medical report to obtain his medical clearance.

Nine months later, on April 24, 1998, Dr. Brattain again notified plaintiff that he needed the comprehensive information previously requested, that plaintiff's status was still "medically

disqualified" and that he would not receive medical clearance until he submitted the required medical information.

Four months later, on August 19, 1998, Dr. Brattain notified plaintiff that the FAA had received information from Dr. Bielski indicating that he was adjusting plaintiff's medication but that plaintiff still needed to submit the comprehensive medical report to obtain medical clearance. On September 23, 1998, Dr. Brattain notified plaintiff that the FAA was still waiting for the comprehensive medical report to determine plaintiff's medical status. The deputy regional flight surgeon, Dr. Robert Liska, met with plaintiff on October 22, 1998, and again on December 1, 1998, to discuss the need for plaintiff to achieve acceptable control of his diabetes. Dr. Liska's responsibilities included examining and evaluating the medical qualifications of individuals to see if they could continue working. Dr. Liska informed plaintiff that his doctor's plan to prescribe Rezulin and insulin together was unacceptable because under FAA regulations, an ATCS taking insulin could not also take Rezulin. Dr. Liska also sent plaintiff a letter on December 1, 1998, notifying him that the FAA still needed a comprehensive medical report before plaintiff could receive medical clearance.

Plaintiff and Dr. Liska met again on January 15, 1999. At this meeting, plaintiff told Dr. Liska that he was no longer taking Rezulin and needed additional time to document his control of his blood sugars. Dr. Liska sent plaintiff a letter on January 28, 1999, stating that the FAA wanted a comprehensive report from plaintiff's physician no later than March 9, 1999. After that deadline passed, Dr. Liska sent a letter to plaintiff on March 16, 1999, stating that the FAA was still waiting for the medical report, as well as hospitalization records, reports of accidents, and verification from a specialist that he had been educated about diabetes and its control.

On April 16, 1999, Dr. Liska sent a second letter to plaintiff detailing the requested information. On April 22, 1999, plaintiff's supervisor, Ralph Davis, sent notice to Dyrek that if he failed to comply with the deadlines for failing to supply medical information, plaintiff would face disciplinary action.

Dr. Brattain determined on May 3, 1999, that plaintiff was permanently medically disqualified from performing ATCS duties. On May 20, 1999, the FAA notified plaintiff that it had determined he was medically disqualified from his duties and that he should seek reconsideration of the decision with the Federal Air Surgeon or complete an application for other types of positions within 15 days. Plaintiff opted for reconsideration, and his records were reviewed by a panel of medical doctors with the Occupational Health Division. The panel issued a report December 16, 1999, recommending that the federal air surgeon sustain the disqualification because plaintiff did not have adequate documentation in his record to meet minimum requirements for a special consideration. The panel found that plaintiff's diabetes was not well controlled. The report included a note that plaintiff had been encouraged to submit all information he wished the air surgeon to consider but had failed to do so. The medical records available did not indicate plaintiff's formulation or dosage of daily insulin. On December 21, 1999, the federal air surgeon, Dr. Jon Jordon, sustained the regional flight surgeon's disqualification on the basis that plaintiff's medical condition rendered him ineligible to perform ATCS duties and that his medical documentation was insufficient to allow him special consideration status.

Plaintiff faxed some medical updates to the federal air surgeon on January 3, 2000, including information suggesting that "he was just learning that there is a relationship between

diet and blood glucose." On January 7, 2000, the deputy regional flight surgeon notified plaintiff's supervisor that the national air surgeon had sustained the medical disqualification. Plaintiff received a temporary work assignment in which he did not direct the operation or movement of aircraft. In a February 14, 2000, letter, plaintiff's supervisor informed plaintiff that the FAA proposed to remove him from his ATCS position because of his "inability to meet medical standards required for an Air Traffic Control Specialist."

On February 27, 2000, plaintiff sent his supervisor a letter that included new information about his medical condition that plaintiff believed placed him within FAA guidelines. Plaintiff sent this additional documentation to the federal air surgeon on March 2, 2000. In this documentation, Dr. Bielski attested that plaintiff's blood sugar was the "lowest it has been over the last several years" and that "currently there is no evidence of the diabetes affecting his eyes or his kidneys." A confirmatory note from plaintiff's eye doctor as well as charts of his blood sugar were also included. Dr. Liska had difficulty interpreting some of the information in these materials but made no further inquiry of Dr. Bielski. He stated that he was uncomfortable certifying plaintiff to perform safety-related duties based on incomprehensive data.

This information was also reviewed by a panel of medical doctors, which again recommended that the federal air surgeon sustain the medical disqualification because the documentation in plaintiff's records from 1998 and 1999 did not meet minimum requirements for a recommendation for special consideration and the more recent records indicated that until a short time before, plaintiff's diabetes was poorly controlled and he had not achieved stable diabetic control. The regional flight surgeon notified Davis, plaintiff's supervisor, that there was nothing in the additional materials that would change plaintiff's medical status.

In a letter dated March 14, 2000, plaintiff's supervisor notified plaintiff that he was being removed from FAA employment. In a letter dated March 15, 2000, Dr. Steve Schwendeman, a member of the medical review panel, notified plaintiff that his glucose and glycohemoglobin levels still did not demonstrate adequate stable diabetic control to grant plaintiff special consideration. The FAA terminated plaintiff effective March 17, 2000.

To the extent possible, the FAA continues the employment of ATCS employees who lose their medical clearance. Whether this is done depends on whether there are current vacancies. Plaintiff made a request for alternative placement on March 17, 2000, the date of his termination. He apparently received no such placement.

Plaintiff filed a timely claim of discrimination based on disability with the U.S. Department of Transportation (DOT); a final agency decision dismissing the claim because plaintiff had a pending union grievance issued July 13, 2000. He filed the instant action in October 2000. Defendant has moved for summary judgment, claiming that plaintiff was removed from his position because he failed to demonstrate that his diabetes was under control.

II. Standard for Motions for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53

(1986). The non-moving party must present more than a scintilla of evidence to support its position and "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986).

III.  Discussion

Defendant claims that in the absence of any direct evidence of discrimination, plaintiff must establish a prima facie case of discrimination based on disability. This requires him to show that he is a qualified individual, that he suffered an adverse employment action, and that others outside the protected class were treated more favorably. *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1457 N. 18 (7th Cir. 1995). Once the employee makes a prima facie case, the employer must come forward with a legitimate, nondiscriminatory reason for the adverse employment action. The employee has the burden of proving that this proffered reason is actually pretext for discrimination. To establish pretext, the employee must establish that the employer's reason is actually a lie or a phony reason for the decision. *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). This requires the employee to do more than simply point to an assessment that is contrary to the employer's. The issue is whether management "honestly held [its] views." *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1292 (7th Cir. 1997).

Defendant maintains that its legitimate and nondiscriminatory reason for terminating plaintiff's employment was that he failed to establish that his diabetes was under control, despite repeated requests for such information over a two-year period.[1] It is not a violation of the ADA

---

[1] In its reply, defendant raises the issue of whether plaintiff has a disability as defined under the ADA. Because the defendant did not raise the issue in its memorandum in support of the motion for summary judgment, the court will not consider it. However, the court notes that defendant misstates the definition of "disability" when it argues that plaintiff cannot have a disability because he is not substantially limited in working. A person does not have to be

or Rehabilitation Act to require an employee in a safety-related position to control his diabetes. *See Siefken v. Village of Arlington Heights*, 65 F.3d 664, 667 (7th Cir. 1995) (city did not violate the ADA when it terminated a police officer after he experienced a severe diabetic reaction while driving). Indeed, plaintiff does not challenge the FAA's requirement that he keep his diabetes controlled. Defendant further claims that plaintiff has offered absolutely no evidence to establish that its proffered explanation is pretextual.

Plaintiff admits he received defendant's repeated requests for additional documentation or explanation of his medical condition between June 1997 and his termination in March 2000. He claims, however, that summary judgment is inappropriate because questions of fact exist concerning whether his diabetes, as demonstrated by blood sugar values, was properly controlled; and whether he failed to demonstrate that his diabetic condition was properly controlled. He asserts that "every objective fact of record in this case supports the proposition that plaintiff performed his duties without flaw and that his diabetes was not only under control, but was not even a factor relevant to assessing his job performance."

This misses the point. Defendant's proffered reason for terminating plaintiff is not that his diabetes affected his performance, it is that he did not establish that his diabetes was under control. Plaintiff does not challenge the FAA's policy of requiring medical clearance for its air traffic controllers, certainly a legitimate "essential function" of a position that affects the safety of so many. It is simply irrelevant that plaintiff was performing his duties well; defendant does

---

substantially limited in working to have a disability as long as he is substantially limited in another "major life activity." Insulin-dependent diabetics can be substantially limited in the major life activity of eating. *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916, 923-24 (7th Cir. 2001).

not even dispute this point. As defendant points out, however, the FAA is not required to wait until an insulin-dependent diabetic has a reaction on the job before it is allowed to withdraw his medical clearance.

Nor can plaintiff defeat summary judgment by establishing that his diabetes actually was under control; he must establish that defendant's belief that it was not under control or that he had not properly documented its control was not based in fact or was simply a cover-up for discrimination. As stated above, showing that the FAA was mistaken in its assessment is not enough to establish pretext.

Plaintiff relies on his AIC tests—which he claims indicate that his diabetes was controlled—to dispute the defendant's asserted reason for terminating him. He concludes that since his diabetes was under control, defendant's proffered reason for withdrawing his medical clearance must be pretextual. First, defendant's initial withdrawal of plaintiff's medical clearance was triggered by the information that plaintiff had begun to use insulin to control his condition. This was a change in plaintiff's diabetic condition—to that of an "insulin-dependent diabetic"—that required "special consideration" before medical clearance could be granted. This is certainly an "objective fact" that indicates plaintiff's condition was not under control. Plaintiff also admits that in the initial letter he received, defendant informed him that to maintain special clearance, he needed to submit a comprehensive medical report from his attending physician that included specific information as to his diagnosis, medication, current status, prognosis and recommendations, treatment regimen, and test results. Considering his failure to provide thorough documentation to prove that his diabetes was under control, despite repeated requests to do so, defendant's continued denial of medical clearance is not indicative of pretext.

As to the AIC tests that plaintiff relies on so heavily to establish control of his condition, plaintiff did not submit blood-sugar test results until more than two years after he lost his medical clearance. Moreover, Dr. Liska explained why the documentation he received, along with plaintiff's doctor's explanation, was inadequate. Plaintiff ignores most of Dr. Liska's testimony that the documentation was incomplete and unclear, and that he did not feel comfortable basing a decision to approve plaintiff's medical clearance on such paltry evidence that plaintiff's diabetes was under control. Plaintiff has simply failed to establish that defendant's reason for withdrawing his medical clearance and refusing to reinstate it was in any way a pretext for discrimination.

Plaintiff's last point is that several positions in the FAA for which he was qualified do not require medical clearance and the FAA's discriminatory intent is clear from the fact that it did not place plaintiff in one of these positions. The record, however, indicates that plaintiff was informed that he could apply for such positions but that he did not apply for any until he was terminated on March 17, 2000. As plaintiff himself states, there were positions he could perform "dependent upon vacancies." The record is devoid of any evidence, however, that such a vacancy existed on March 17, 2000.

IV. Conclusion

Plaintiff has failed to establish that defendant's proffered reason for the withdrawal of his medical clearance and subsequent termination was pretextual. The court therefore grants defendant's motion for summary judgment.

**ORDERED:** The court grants the defendant's motion for summary judgment. Judgment in favor of defendant, Jane Garvey, and against plaintiff, Gary Michael Dyrek, will be set forth on a separate document and entered in the civil docket. FRCP 58, 79(a).

**ENTER:**

George W. Lindberg
United States District Judge

DATED: AUG 3 0 2001